# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANDREA J. HALL, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   Case No. CIV-17-497-D |
| OKLAHOMA DEPARTMENT OF REHABILITATION SERVICES, | ) ) ) ) |
|     Defendant. | ) ) |

## ORDER

Before the Court is Defendant Oklahoma Department of Rehabilitation Services' (ODRS) Motion to Dismiss [Doc. No. 4]. Plaintiff Andrea Hall (Hall) has filed her response in opposition [Doc. No. 9] and ODRS has replied [Doc. No. 10]. The matter is fully briefed and at issue.

## BACKGROUND

Hall is a forty-six year old African American woman who was employed at ODRS from 1996 to 2016, when she was terminated while holding the position of Director of Innovation, an executive level position. She alleges that soon after Noel Tyler was appointed as Interim Executive Director of ODRS, she was subjected to "unequal terms and conditions." Petition, ¶ 21. Among these unequal conditions were the allegations that Tyler went out of her way to avoid Hall, ignored Hall's emails, spoke negatively about Hall, and did not allow Hall to participate in meetings

or favorable assignments. *Id*. ¶¶ 22-27, 32-33. Hall alleges that Commissioner Linda Collins expressed her belief that Hall was lazy because of her race. *Id*. ¶ 36. Hall further contends that younger, non-African American employees were not subjected to the same treatment as her. *Id*. ¶¶ 30, 34. Lastly, Hall alleges she was terminated for reporting the alleged discrimination and mistreatment. *Id*. ¶ 46. Hall's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*., the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621 *et seq*., and the Oklahoma Antidiscrimination Act (OADA), 25 OKLA. STAT. §§ 1101 *et seq*.

ODRS moves to dismiss Hall's Complaint for failure to state a claim and lack of subject matter jurisdiction under the Eleventh Amendment of the United States Constitution and Rules 12(b)(1) and (6), Federal Rules of Civil Procedure. ODRS contends Hall's Complaint should be dismissed because: (1) ODRS has sovereign immunity from her ADEA claims; (2) Hall failed to exhaust her administrative remedies under Title VII and the OADA; (3) Hall does not plausibly allege a violation of either Title VII or the OADA; and (4) Hall has not complied with the notice provisions of the Oklahoma Governmental Tort Claims Act (OGTCA), 51 OKLA. STAT. §§ 151 *et seq*.

## STANDARD OF DECISION

Pursuant to the seminal decisions of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to survive a motion to

dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570).[1] Under this standard, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original)).

The "plausibility" standard announced in *Twombly* and *Iqbal* is not considered a "heightened" standard of pleading, but rather a "refined standard," which the court of appeals has defined as "refer[ring] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

---

[1] Although Hall's action was originally brought in state court, *see* Notice of Removal [Doc. No. 1], the Federal Rules of Civil Procedure and the Supreme Court's pleading standard in *Twombly* and *Iqbal* governs the sufficiency of her claims. Fed. R. Civ. P. 81(c)(1)("These rules apply to a civil action after it is removed from a state court."); *McKnight v. Linn Operating, Inc.*, No. CIV-10-30-R, 2010 WL 9039794, at *1 (W.D. Okla. Apr. 1, 2010) ("Because the Federal Rules apply after removal, Rule 12(b)(6) and the attendant standards set by the Supreme Court apply. If, however, the Court concludes that Plaintiffs' allegations fail under the *Twombly* and *Iqbal* standard, it may order Plaintiffs to replead their claims if necessary."); *accord Lynch v. Jackson*, 478 F. App'x 631, 616 (11th Cir. 2012) (per curiam); *Simmerman v. Ace Bayou Corp.*, 304 F.R.D. 516, 518 (E.D. Ky. 2015); *Levitt v. Sonardyne, Inc.*, 918 F. Supp. 2d 74, 83 (D. Me. 2013).

innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik*, 671 F.3d at 1191 (citing *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). The Tenth Circuit has noted that the nature and specificity of the allegations required to state a plausible claim will vary based on context. *Robbins*, 519 F.3d at 1248. "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.' " *See id*. at 1247.

Accordingly, in deciding *Twombly* and *Iqbal*, there remains no indication the Supreme Court "intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik*, 671 F.3d at 1191 (citing *Iqbal*, 556 U.S. at 678). It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *Khalik*, 671 F.3d at 1192 ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden.") (quoting *al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009)).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. *Pueblo of Jemez v. United States*,

790 F.3d 1143, 1148 n. 4 (10th Cir. 2015). A facial attack questions the sufficiency of the complaint's allegations. *Id*. In reviewing a facial attack, a district court must accept the allegations in the complaint as true. *Id*. In a factual attack, the moving party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Id*. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id*. Instead, the court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id*. Here, ODRS's allegations constitute a factual attack because they challenge the facts upon which Hall bases subject matter jurisdiction over certain claims.

## DISCUSSION

**I.  Sovereign Immunity and the ADEA**

Because state sovereign immunity is a threshold jurisdictional issue, the Court addresses it first. *Brockman v. Wyoming Dep't of Family Services*, 342 F.3d 1159, 1163 (10th Cir. 2003) ("Because state sovereign immunity is a threshold jurisdictional issue, we must address it first when it is asserted by a defendant.") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

The Eleventh Amendment bars a suit for money damages in federal court against a state by its own citizens. *Bd. of Trustees of Univ. of Alabama v. Garrett*,

531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); *Edelman v. Jordan*, 415 U.S. 651, 663–664 (1974). Agencies of the State of Oklahoma, such as ODRS, are treated as "arms of the state" for the purpose of sovereign immunity under the Eleventh Amendment. *See Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017); *Lee v. Oklahoma*, No. CIV-13-7-HE, 2013 WL 3804855, at *1 (W.D. Okla. July 19, 2013) (noting that "ODRS is part of, or an arm of, the State of Oklahoma.") (citation omitted).

The Supreme Court has also recognized a sovereign immunity distinct from Eleventh Amendment immunity that applies against all suits, whether in state or federal court. *Alden v. Maine*, 527 U.S. 706, 713 (1999) ("States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution[.]").[2] Thus, there are two discrete types of sovereign immunity: Eleventh Amendment immunity from suit in federal court, and a general sovereign immunity against all suits. *See Lujan v. Regents of Univ. of Calif.*, 69 F.3d 1511, 1522 (10th Cir. 1995) ("Eleventh Amendment immunity is … separate from

---

[2] Oklahoma has adopted sovereign immunity. *See* 51 OKLA. STAT. § 152.1 ("Oklahoma does hereby adopt the doctrine of sovereign immunity. The state, its political subdivisions, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts. … [I]t is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution.").

sovereign immunity and can exist even where sovereign immunity does not.") (citations omitted); *accord Harris v. Okla. Office of Juvenile Affairs ex rel. Cent. Okla. Juvenile Ctr.*, 519 F. App'x 978, 980 (10th Cir. 2013) (unpublished).

Such immunity, however, is not absolute. For example, Congress may rescind a state's sovereign immunity if it "has unequivocally expressed its intent to abrogate the immunity, and ... has acted pursuant to a valid exercise of power." *Mojsilovic v. Okla. ex rel. Bd. of Regents for Univ. of Okla.*, 841 F.3d 1129, 1131 (10th Cir. 2016) (citing *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996)). Moreover, a state may waive its immunity by consenting to suit. *Estes v. Wyo. Dep't of Transp.*, 302 F.3d 1200, 1203 (10th Cir. 2002). A State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the applicable text as will leave no room for any other reasonable construction. *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1315 (10th Cir. 2012).

The ADEA makes it illegal for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). However, the Supreme Court has noted that "in the ADEA, Congress did not validly abrogate the States' sovereign immunity to suits by private individuals. State employees are protected by

7

state age discrimination statutes, and may recover money damages from their state employers, in almost every State of the Union. Those avenues of relief remain available today, just as they were before this decision." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91-92 (2000)). Accordingly, the Court looks to whether ODRS has waived immunity by removing Hall's action to this Court.

In *Estes, supra*, the Tenth Circuit was confronted with the question of whether the mere act of removing federal law claims waives a state's sovereign immunity in federal court. There, the plaintiff brought a claim under the Americans with Disabilities Act (ADA), as well as state law claims, against the Wyoming Department of Transportation in state court. The defendant removed the case to federal court, stating it was not waiving any constitutional challenges to the district court's jurisdiction.[3] The district court concluded Congress validly abrogated the states' sovereign immunity for violations of Title I of the ADA, and the defendant appealed.

Relying in part on precedent from the Supreme Court, notably, *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002), the Tenth Circuit concluded Congress did not validly abrogate the states' sovereign immunity from suit under Title I of the ADA, but the defendant waived its sovereign immunity for

---

[3] Similarly, in its Notice of Removal, ODRS states it does not waive any right to assert any defense that could limit the Court's jurisdiction, including, but not limited to, sovereign immunity. *See* Notice of Removal, ¶ 4.

the ADA claim when it removed the case to federal court. *Estes*, 302 F.3d at 1206 ("We conclude that [defendant] has waived its sovereign immunity relative to the ADA claim even if it attempted to remove the present case simply to federal court to challenge the jurisdiction of the federal forum. ... It is only when a State removes federal-law claims from state court to federal court that it 'submits its rights for judicial determination' ... and unequivocally invokes the jurisdiction of the federal courts.") (citations omitted).

Pursuant to *Estes*, the Court finds that immunity from suit in federal court is not at issue here because ODRS's removal of Hall's case to this Court effects a waiver of its Eleventh Amendment immunity. However, *Estes* is ambiguous as to whether ODRS waived its sovereign immunity by removing the action. That question was seemingly answered in *Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014), wherein the Tenth Circuit held a state may waive immunity from suit while *retaining* immunity from liability for monetary damages. The court cited with approval circuit court decisions that analyzed state sovereign immunity as consisting of both immunity from suit in a federal forum, which is waived by voluntary removal to federal court, and immunity from liability in both state and federal courts, which is not so waived. *Id*. at 1172-73. It stated, "[u]nlike effecting a waiver of immunity from suit through removal, however, 'the state's waiver or retention of a separate immunity from liability is not a matter in which there is an overriding federal interest

justifying the application of a federal rule.' A state does not gain an unfair advantage asserting in federal court an affirmative defense it would have had in state court. *Accordingly, we recognize that a state may waive its immunity from suit in a federal forum while retaining its immunity from liability.*" *Id.* at 1173 (emphasis added, internal citations omitted); *accord Bright v. Univ. of Okla. Bd. of Regents*, 705 F. App'x 768, 769 n. 2 (10th Cir. 2017) (unpublished).[4]

As stated *supra*, ODRS noted in its removal that it reserved and did not waive the right to immunity from liability. Notice of Removal, ¶ 4. And, as noted above, the Supreme Court has ruled the ADEA is unconstitutional as applied to the states because the statute was not enacted under section 5 of the Fourteenth Amendment, the only recognized constitutional basis for abrogating states' sovereign immunity. *Kimel*, 528 U.S. at 91-92. Accordingly, the Court finds ODRS's removal of the present case did not waive its objection to ADEA *liability* on the basis of sovereign

---

[4] The *Trant* court explained that its view was not inconsistent with *Estes*. *Trant*, 754 F.3d at 1173 ("Recognizing that a state may waive immunity from suit while retaining immunity from liability for monetary damages is consistent with our holding in [*Estes*]. In *Estes*, we concluded that Wyoming's removal of a federal law claim acted as an unequivocal waiver of immunity from suit in federal court. But our holding was based on the principle, articulated in *Lapides*, that the Constitution cannot permit states to take inconsistent litigating positions by invoking and challenging federal court jurisdiction."). This distinction is important since, to the extent *Estes* and *Trant* could have been construed as conflicting opinions, the Court would be obligated to follow *Estes*. *See Hiller v. Okla. ex rel. Used Motor Vehicle and Parts Comm'n*, 327 F.3d 1247, 1251 (10th Cir. 2003) (noting that to extent two panel decisions were in conflict, court was obligated to follow earlier decision over later one.)

immunity. *See Trant, supra*; *accord Stroud v. McIntosh*, 722 F.3d 1294, 1303 (11th Cir. 2013) (State of Alabama's removal of ADEA suit to federal court waived Eleventh Amendment immunity, but not sovereign immunity under state law from ADEA liability). Defendant's motion on this issue is granted.

## II. Exhaustion of Administrative Remedies

ODRS next contends Hall failed to exhaust her administrative remedies with respect to her claims of age discrimination.[5] The OADA contains an express requirement that an employee must timely file an administrative charge of discrimination with the Attorney General's Office of Civil Rights Enforcement or the Equal Employment Opportunity Commission prior to filing suit for "discrimination based on race, color, religion, sex, national origin, age, disability, genetic information with respect to the employee, or retaliation." 25 OKLA. STAT. §

---

[5] Although ODRS references Title VII in this regard, Title VII does not act to prohibit age discrimination/retaliation; that function is left to the ADEA. Congress and the Supreme Court thus treat the ADEA and Title VII as two separate and distinct statutory provisions. *See, e.g., Burns v. AAF-McQuay, Inc.*, 980 F.Supp. 175, 179 (D. W.Va. 1997) ("Title VII and the ADEA … are separate and distinct statutory schemes with unique remedial doctrines and enforcement provisions applicable to each."); *Greer v. Bd. of Trustees of Univ. of Distr. of Columbia*, 113 F. Supp. 3d 297, 305 (D.D.C. 2015) ("Title VII does not prohibit, or protect against, employment discrimination on the basis of age (or protect against retaliation for opposing age discrimination). That protection is found in a wholly separate statute, the [ADEA]."). As noted *supra*, the Court finds that ODRS has not waived its objection to ADEA liability on the basis of sovereign immunity.

1350(A). The OADA expressly provides that the administrative charge must be filed within 180 days of the last date of alleged discrimination. *Id*.

Here, ODRS contends Hall failed to exhaust administrative remedies with respect to her age discrimination claim because, although Hall checked the box marked "age" on her EEOC charge, the document does not contain any allegation of age discrimination. Mot. at 8. A party asserting a claim of discrimination must make a charge that, at minimum, identifies the parties and generally describes the alleged unlawful action or practice. *Mackley v. TW Telecom Holdings, Inc.*, 296 F.R.D. 655, 669 (D. Kan. 2014). A plaintiff's claims are limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory acts she alleged in the administrative charge. *Id*. Therefore,

> to exhaust administrative remedies, a charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted. A party may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances. Further, an EEOC charge must allege facts in support of the claimant's discrimination claim beyond merely checking a box on the EEOC form.

*Id*. (citations and internal quotations omitted).

Nonetheless, "[a] charge need only 'describe generally' the alleged discrimination in order to 'give notice of an alleged violation to the charged party.'" *Jones v. Needham*, 856 F.3d 1284, 1291 (10th Cir. 2017) (quoting *Woodman v.*

*Runyon*, 132 F.3d 1330, 1342 (10th Cir. 1997) (internal citations omitted)). Thus, a court "liberally construe[s] charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007). Hall's EEOC charge has the boxes checked for her allegations of race and age based discrimination and retaliation, and it states that Tyler went out of her way to avoid meeting with Hall and refused to speak with her. The charge further alleges Hall was denied the opportunity to speak at an event, Tyler spoke negatively about her while she was on leave, and she was asked to appear at a meeting despite the fact she was on leave. As a result, Hall contends she was terminated. In the Court's view, these allegations were sufficient to alert ODRS to the age discrimination allegations and to trigger an investigation that would look into the nature of Hall's treatment and why she was fired. Defendant's motion on this issue is denied.[6]

## III. Prima Facie Case of Title VII and OADA Violation

ODRS contends Hall's Title VII and OADA claims should be dismissed as she has cited no direct evidence of racial discrimination or retaliation. It then proceeds to embark on a discussion of the *McDonnell Douglas* framework that is

---

[6] Since "[t]he OADA is analyzed similarly to Title VII claims," *Jones*, 856 F.3d at 1292 (citation omitted), the foregoing analysis applies equally to Hall's OADA claims.

13

applied to determine whether a plaintiff can establish discrimination or retaliation. However, the Supreme Court has noted that "[t]he prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002).[7] And even in this post-*Twombly/Iqbal* era, federal courts have held that at the pleading stage, it is inappropriate to measure a complaint against a particular formation of the prima facie case for discrimination/retaliation. *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (noting Rule 12(b)(6) did not require plaintiff to set forth a prima facie case of discrimination under Title VII); *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)("The facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation. The facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation.").

To state a plausible claim for relief for Title VII discrimination based on race, Hall must plead facts which, if proved, establish that (1) she is a member of a

---

[7] Indeed, the *Twombly* Court noted that *Swierkiewicz* did not change the law of pleading, but simply re-emphasized that the use of a heightened pleading standard for Title VII cases was contrary to the Federal Rules' structure of liberal pleading requirements. *Twombly*, 550 U.S. at 570.

protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class. *Khalik*, 671 F.3d at 1192 (citing *Sanchez v. Denver Public Schools*, 164 F.3d 527, 531 (10th Cir. 1998)); *see also Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005)). Reviewing the complaint in its entirety, the Court finds that Hall has alleged sufficient facts to state a plausible claim for relief on this cause of action based on her race. The complaint alleges Hall is African-American and, through hard work and dedication, was ultimately promoted to Director of Innovation, an executive level position. Nonetheless, Hall alleges she: (1) had assignments removed from her and assigned to Caucasian employees; (2) was told she was viewed as "lazy" because of her race; (3) was isolated in her job because of her race; and (4) did not receive assistance as did other non-African American employees or any meaningful investigation to cure the discrimination. In the Court's view, these allegations adequately give the defendant fair notice of what Hall's claim is and the grounds upon which it rests.

To establish a plausible claim under Title VII for retaliation, a plaintiff must allege: (1) she engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006). Hall alleges

15

that she made grievances about racial discrimination to her superiors, was assured that she had nothing to worry about with her job security, yet was ultimately fired for her complaints. Viewing the complaint as a whole, the Court believes that Hall has made a minimal, plausible showing of retaliation. The relevant issue at this stage is not whether Hall will ultimately prevail on her claims, but whether her complaint is sufficient to cross the federal court's threshold. *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011). Granting a motion to dismiss remains a harsh remedy, which must be cautiously studied not only to effectuate the spirit of the liberal rules of pleading, but also to protect the interests of justice. *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely. *Id*. Defendant's motion on this issue is denied.

## IV. Oklahoma Governmental Tort Claims Act

Lastly, ODRS contends Hall has failed to exhaust administrative remedies under the OGTCA regarding her allegations of negligence. Hall admits she has not complied with the OGTCA, but contends such allegations support her claims under Title VII and the OADA. Under the OGTCA, a suit against a governmental entity must be based upon the plaintiff presenting written notice of a claim within one year of the date the loss occurs, or the claim is forever barred. *Pelligrino v. State ex rel. Cameron Univ. ex rel. Bd. of Regents*, 2003 OK 2, ¶ 6, 63 P.3d 535, 537. The

complaint does not specifically set forth a cause of action for negligence. Rather, Hall contends that ODRS failed to properly hire, train, supervise or discipline its employees, which constituted negligence and gave rise to her claims under the OADA. *See* Petition, ¶¶ 83-85.[8]

Hall states that she does not assert an independent negligence claim, and since the plaintiff is the "master of the complaint," the Court does not construe the complaint as setting forth such a claim. Accordingly, the Court finds the OGTCA inapplicable to the issues here, and Defendant's motion is denied on this issue as well.

## CONCLUSION

Defendant's Motion to Dismiss [Doc. No. 4] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. Plaintiff's claims arising under the ADEA are dismissed for lack of subject matter jurisdiction. Defendant's motion is denied in all other respects.

**IT IS SO ORDERED** this 20th day of February 2018.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[8] OADA claims are not "torts" within the meaning of the OGTCA, and are not subject to its provisions. *Bruehl v. Okla. ex rel. Okla. Indigent Defense Sys.*, No. CIV-13-1247-HE, 2014 WL 2879744, at *3 (W.D. Okla. June 24, 2014).